UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    -against-

RALPH ARCHER,

               Defendant.

04 Cr. 505 (RJH)

**MEMORANDUM OPINION**

       On October 11, 2005, defendant Ralph Archer pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Because Archer had three prior narcotics felony convictions, the government argued that he was subject to a mandatory minimum sentence of fifteen years pursuant to the Armed Career Criminal Act ("ACCA"). *See* 18 U.S.C. § 924(e) (2000). Archer objected to the enhancement on the ground that two of his prior offenses no longer qualified as predicate felonies under the ACCA. At sentencing, the Court held that Archer was not subject to the ACCA. This opinion sets forth the Court's reasoning.

## BACKGROUND

       On May 14, 2004, New York City police officers investigating drug sales observed defendant Ralph Archer enter a known drug location. (Compl. ¶ 2(a).) One plainclothes officer followed Archer to the third floor of the building. (*Id.* ¶ 2(b).) Archer exited an apartment on the third floor and walked downstairs, passing the

plainclothes officer.  (*Id.*)  As Archer neared the lobby, he saw uniformed officers talking with people waiting there and turned around to run back upstairs.  (*Id.* ¶ 2(c).)  As Archer rushed upstairs, he collided with the plainclothes officer, who felt a gun in the waistband of Archer's pants.  (*Id.* ¶ 2(d).)  The officer secured the .380 caliber semi-automatic pistol and placed Archer under arrest.  (*Id.* ¶ 2(d)–(e).)

On October 11, 2005, Archer pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  Under the Armed Career Criminal Act ("ACCA"), anyone who violates § 922(g)

> and has three previous convictions by any court [of a crime punishable by imprisonment for a term exceeding one year] for a violent felony or a serious drug offense, or both, committed on occasions different from one another, . . . shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e)(1).  A "serious drug offense" is defined, in relevant part, as

> an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more *is* prescribed by law.

18 U.S.C. § 924(e)(2)(A)(ii) (emphasis added).  Archer has three prior felony convictions for which a maximum term of imprisonment of ten years *was* prescribed at the time of his convictions:  (1) a conviction on or about November 7, 1991 in New York Supreme Court, Bronx County, for criminal sale of a controlled substance in the third degree, a Class B felony; (2) a conviction on or about February 23, 1995 in New York Supreme

2

Court, Bronx County, for attempted criminal sale of a controlled substance in the third degree, a Class C felony; and (3) a conviction on or about March 21, 1995 in New York Supreme Court, Bronx County, for attempted criminal sale of a controlled substance in the third degree, a Class C felony.  The Probation Office concluded that these three convictions were serious drug offenses that triggered the mandatory minimum fifteen-year sentence called for under the ACCA.[1]

Archer argues, however, that the text of 18 U.S.C. § 924(e)(2)(A)(ii) requires the Court to determine the seriousness of the predicate state narcotics felonies by reference to the state sentencing statute in effect today.  On December 14, 2004, after Archer's arrest in the instant case, New York passed the Drug Law Reform Act ("DLRA"), which replaced the indeterminate sentencing scheme of the Rockefeller Drug Laws with a determinate system and reduced mandatory minimum prison sentences for nonviolent felony drug offenders.  *See* 2004 N.Y. Laws Ch. 738 (codified in scattered sections of N.Y. Correction Law, Crim. Proc. Law, Exec. Law, and Penal Law (2004)) (effective January 13, 2005).  On Archer's sentencing date in this case (August 25, 2006), the maximum term of imprisonment prescribed by law for the Class C felony of attempted

---

[1] The Probation Office also cited Archer's September 12, 1991 conviction in New York Supreme Court, New York County, for robbery in the second degree, a Class C felony. However, Archer was adjudicated a youthful offender (Presentence Rep. ¶ 34), effectively "setting aside" the conviction. *See United States v. Matthews*, 205 F.3d 544, 548 (2d Cir. 2000) (holding that New York's youthful offender law is intended to "set aside" rather than to "expunge" convictions); *United States v. Fernandez*, 390 F. Supp. 2d 277, 280 (S.D.N.Y. 2005).  Thus, the robbery conviction and youthful offender adjudication do not constitute a "conviction[] . . . for a violent felony," as those terms are defined in §§ 921(a)(20) and 924(e)(2).  In any case, because this Court finds that Archer's two convictions in 1995 are not predicate offenses under the ACCA, the Court need not decide whether Archer has one or two remaining predicate offenses.

criminal sale of a controlled substance in the third degree was nine years.  N.Y. Penal Law §§ 70.70, 220.39 (2006).  Thus, if the Court were to determine the seriousness of Archer's prior felonies by reference to the maximum term of imprisonment prescribed by state law at the time of sentencing in federal court for the felon-in-possession violation, Archer would have only one predicate felony and therefore would not be subject to a fifteen-year mandatory minimum sentence under the ACCA.

The government argues that, to the contrary, the text of 18 U.S.C. § 924(e) and decisions by the United States Supreme Court and Second Circuit interpreting that text require the Court to look to the state sentencing statute in effect at the time of Archer's state law felony convictions, at which time the maximum term of imprisonment was greater than ten years.  (Gov't Letter, Aug. 10, 2006, at 2–3.)  Therefore, in the government's view, the fact that New York would no longer consider Archer's state crimes as serious drug offenses, due to the DLRA's reduced sentencing scheme, is irrelevant.

## DISCUSSION

Determination of the proper sentence in this case requires the Court to interpret the meaning of 18 U.S.C. § 924(e)(2)(A)(ii), which defines a serious drug offense as one "for which a maximum term of imprisonment of ten years or more is prescribed by law." Both parties contend that the quoted language is clear and that the statute's meaning is plain; unfortunately, the interpretations they proffer are diametrically opposed. Defendant's interpretation is most straightforward:  Section 924(e)(2)(A)(ii) employs the present tense ("is prescribed"); therefore, the relevant date for determining the

seriousness of a predicate state offense is the date upon which a defendant is sentenced under the ACCA. (Def. Letter, Feb. 2, 2006, at 3.) The government argues, however, that the language "is prescribed" refers back to § 924(e)(1), which establishes a mandatory minimum sentence for a felon-in-possession who "has three previous convictions . . . for . . . a serious drug offense." Thus, according to the government, under the plain meaning of the statute the word "is" does not refer to the present state sentencing scheme, but rather to the sentencing scheme in effect at the time of any "previous convictions." (Gov't Letter, Aug. 10, 2006, at 2–3.) In other words, "is prescribed" should be read to mean "was prescribed at the time of the defendant's state sentencing."

   The Sixth Circuit was faced with this very issue in *United States v. Morton*, 17 F.3d 911 (6th Cir. 1994). The defendant therein had five state convictions for cocaine trafficking, all of which carried maximum terms of imprisonment in excess of ten years at the time he was sentenced in state court. *Id.* at 914. Relying on three of these convictions, the federal district court found that Morton was subject to the ACCA's fifteen-year mandatory minimum sentence. The Sixth Circuit reversed. *Id.* at 915. The court observed that, between the time of Morton's state sentencing and the time of his federal sentencing, Tennessee had reclassified a drug trafficking offense involving less than 0.5 grams of cocaine from a Class B felony to a Class C felony with a maximum term of imprisonment of six years (under certain circumstances found to exist in Morton's case). *Id.* at 914. While acknowledging that the language of the ACCA does not offer much guidance in determining at what point in time a term of imprisonment "is

prescribed by law," the court concluded that the statute clearly "leaves the standard by which to judge the seriousness of a state drug conviction to the policy of the state," and noted that at the time Morton was being sentenced for his federal felon-in-possession crime, Tennessee did not consider certain of defendant's prior convictions to be serious enough to warrant a ten-year sentence. *Id.* at 915. The court concluded, therefore, that the prior convictions did not constitute "serious drug offenses" as defined by 18 U.S.C. § 924(e)(2)(A)(ii). *Id.* Further, to the extent there was any doubt as to the court's temporal interpretation of the statute, "the question is at least ambiguous and therefore, under the rule of lenity, should be resolved in defendant's favor." *Id.* (citing *United States v. Bass*, 404 U.S. 336, 348 (1971) ("Where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant.")). Other courts in the Sixth Circuit have followed *Morton*'s logic. *See, e.g., Mallett v. United States*, 334 F.3d 491, 499 (6th Cir. 2003) (approving district court's application of *Morton* where, under new state sentencing scheme, defendant's prior drug offenses were no longer subject to ten-year sentences); *Rice v. United States*, 7 F. App'x 439, 441 (6th Cir. 2001) (citing *Morton* and stating that a "sentencing judge must look to the penalties provided by the state statute at the time a defendant is sentenced on the federal offense"); *United States v. Tolley*, No. 96 Civ. 5343, 1999 U.S. App. LEXIS 3864, 1999 WL 137620, at *10 (6th Cir. 1999) ("Defendant is correct in that § 924(e)(2)(A)(ii) requires the sentencing court to look to current state law and not the state law at the time of the previous conviction.").

Since *Morton*, both the Fourth and Fifth Circuits have considered the application of the ACCA in the context of state drug law reform statutes. In *United States v.*

6

*Hinojosa*, 349 F.3d 200, 205 (5th Cir. 2003), the maximum sentence for the defendant's prior drug offense was ninety-nine years under the Texas statute in effect at the time of his state conviction. After his conviction the sentencing statute was amended to impose a two-year maximum sentence. The defendant, relying on *Morton*, argued that the prior state conviction was not a "serious drug offense" because at the time of his federal sentencing the maximum state sentence was not at least ten years, as required by 18 U.S.C. § 924(e)(2)(A)(ii). The Fifth Circuit rejected defendant's argument, distinguishing *Morton* on the grounds that the Tennessee sentencing statute before the court in *Morton* was retroactive, whereas the revised Texas statute specifically stated that it did not apply retroactively to crimes committed before its effective date. *Hinojosa*, 349 F.3d at 205. Thus the court concluded that Hinojosa would still be subject to a maximum term of at least ten years were he to be sentenced by the state court for his prior state conviction at the time of his federal sentencing. Accordingly, the court found that Hinojosa's prior conviction constituted a "serious drug offense" under the ACCA. *Id.* Similarly, in *United States v. Williams*, 57 F. App'x 553, 556 (4th Cir. 2003) (unpublished opinion), the Fourth Circuit found that a drug crime committed before North Carolina amended its sentencing laws was a "serious drug offense" for purposes of the ACCA because the revised laws were not retroactive.

Neither the Fourth nor Fifth Circuit found it necessary to address whether the use of the present tense in 18 U.S.C. § 924(e)(2) created an ambiguity. Nor did they address the fact that the *Morton* court did not base its decision on the fact that the Tennessee statute was retroactive but, rather, on the finding that state sentencing policy at the time

7

of the defendant's federal sentencing reflected a legislative judgment that the offense was not serious enough to impose at least a ten-year sentence, and that present state policy was determinative in defining a serious drug offense as one "for which a maximum term of imprisonment of ten years or more *is* prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii) (emphasis added); *see Morton*, 17 F.3d at 915.

The reasoning in *Morton* was recently adopted in a sentencing decision by Judge Trager in *United States v. Hammons*, 438 F.Supp.2d 125, 127 (E.D.N.Y. 2006). The defendant therein had been convicted three times for drug offenses that, prior to the enactment of the DLRA, were subject to a maximum term of at least ten years. The government argued that the DLRA was not retroactive,[2] and that if defendant Hammons were sentenced in state court today for the Class C felonies for which he was convicted in 1994, he would be subject to a maximum term of imprisonment of over ten years. *Id.* at 129. Relying on *Hinojosa* and *Williams*, the government concluded that Hammons had three prior "serious drug offenses" and was subject to sentencing under the ACCA. *Id.* The district court initially observed that "it is not at all clear" that the DLRA was not retroactive and noted that, in any event, New York courts had made ameliorative provisions, such as merit time allowances, available to those sentenced before the statute was amended. *Id.* at 129–30. More importantly, the court, like the Sixth Circuit in *Morton*, did not interpret 18 U.S.C. § 924(e) by reference to the retroactivity (or non-retroactivity) of New York's amended drug laws. Instead, Judge Trager held that the ACCA seeks to implement the state's *present view* of the seriousness of the crimes as

---

[2] The New York Court of Appeals subsequently so held. *See People v. Utsey*, No. 113, 2006 N.Y. LEXIS 2628, 2006 WL 2689695 (N.Y. Sept. 21, 2006).

expressed through its current sentencing policies, rather than assessing the seriousness of the crimes by calculating what sentence the defendant would receive if he were to be sentenced in state court now for the state drug offenses. *Id.* at 128, 130. "This policy decision by the State—not the mechanical result of applying the current sentencing structure to Hammons' past crimes—is what should determine, for federal law purposes, whether ACCA should apply." *Id.* at 130. Moreover, this understanding

> comports with a plain reading of ACCA. ACCA only applies when "a maximum term of imprisonment of ten years or more *is* prescribed by law[.]" 18 U.S.C. § 924(e)(2)(A)(ii) (emphasis added). The present tense of the verb "is" denotes that the current sentencing structure is relevant, rather than the sentence that *was* prescribed by law at the time of the earlier crime.

*Id.* Alternatively, the court found that if the word "is" could be read to refer to a past sentencing structure, "the government has identified an ambiguity in the statute because the other reading seems clear and certainly equally reasonable."[3] *Id.*

---

[3] The government attempts to distinguish *Hammons* on the ground that Archer, unlike Hammons, violated the federal felon-in-possession statute *before* the New York state legislature amended its drug laws. (Gov't Letter, Aug. 10, 2006, at 3.) Therefore, if § 924(e) were read to require a court to examine the state sentencing law at the time of the federal offense (here, May 14, 2004), all three of Archer's previous drug convictions would qualify as "serious drug offenses." *Hammons*, however, cannot be read for the proposition that state law on the date of the federal offense is the operative date. Fairly read, Judge Trager ruled that § 924(e) looked to "current" state sentencing law, which, under *Morton*, means the law at the time of federal sentencing. *Hammons*, 438 F. Supp. 2d at 130. Judge Trager did note that Hammons had argued that state law at the time of the federal crime was the operative date but concluded that he did not need to reach this issue as the outcome would be the same. *Id.* at 128. This Court sees no basis for applying the state sentencing statute at the time of the felon-in-possession violation. Section 924(e) is a sentencing enhancement statute; therefore, it is the state policy at the time of the federal sentence that should be the touchstone for defining a "serious drug offense." *Morton*, 17 F.3d at 915.

Based on this Court's own review of the language, structure, and legislative history of the ACCA, the Court agrees with *Hammons* and *Morton* that the ACCA allocates the decision as to the seriousness of a drug offense to state policy as expressed in its current sentencing laws. The Court also concludes that 18 U.S.C. § 924(e)(2)(A)(ii)'s use of the present tense "is" refers to the maximum term of imprisonment that "is prescribed" by state law *at the time of sentencing for the felon-in-possession violation in 18 U.S.C. 922(g)*. Had Congress intended otherwise it just as easily could have defined "serious drug offense" as a state drug offense "for which a maximum term of imprisonment of ten years or more *was* prescribed by law." But Congress did not use the word "was," and this Court cannot read the word into the statute. *See United States v. Bramblett*, 348 U.S. 503, 509 (1954) ("That criminal statutes are to be construed strictly is a proposition which calls for the citation of no authority."). To the extent the language can be interpreted otherwise, the Court agrees with *Morton* that the question is "at least ambiguous."[4] Thus, the rule of lenity applies. *See Moskal v. United States*, 498 U.S. 103, 108 (1990) (stating that a statute is deemed "ambiguous" for purposes of lenity if "a reasonable doubt persists about a statute's intended scope even after resort to 'the language and structure, legislative history, and motivating policies' of the statute" (quoting *Bifulco v. United States*, 447 U.S. 381, 387 (1980))); *Bass*, 404 U.S.

---

[4] The ACCA's legislative history sheds no light on Congress's intent with respect to the question of which date to use in determining the maximum term of imprisonment. *See* Armed Career Criminal Legislation: Hearing on H.R. 4639 and H.R. 4768 before the Subcommittee on Crime of the House Committee on the Judiciary, 99th Cong., 2d Sess. (1986); Armed Career Criminal Act Amendments: Hearing on S. 2312 before the Subcommittee on Criminal Law of the Senate Committee on the Judiciary, 99th Cong., 2d Sess. (1986).

at 348 (holding that rule of lenity "embodies 'the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should.'" (quotation omitted)); *United States v. Simpson*, 319 F.3d 81 (2d Cir. 2003) (finding that rule of lenity applies to ambiguity in sentencing guidelines).

The government argues, however, that the Supreme Court's ruling in *Taylor v. United States,* 495 U.S. 575 (1990), requires this Court to determine the seriousness of Archer's Class C felonies by looking at the maximum term of imprisonment prescribed by state law on his prior state sentencing. In *Taylor*, the Supreme Court considered the meaning of the word "burglary" in the ACCA. The ACCA includes "burglary" in the list of crimes that constitute a "violent felony" for purposes of the sentencing enhancement but does not define "burglary." The Supreme Court held that a state crime constitutes "burglary" if either its statutory definition substantially corresponds to the elements of a "generic" burglary, or the charging paper and jury instructions actually required the jury to find all of the elements of generic burglary to convict the defendant. *Id.* at 602. When the Supreme Court examined the elements of defendant Taylor's conviction, it looked to the state burglary statute under which the defendant was convicted, not the revised statute in effect at the time of his federal sentencing. *Id.* at 578 n.1.

*Taylor* is easily distinguishable from the case at hand. Unlike the definition of "serious drug offense," the ACCA does not define "violent crime" by looking at the maximum term of imprisonment imposed by the state, but rather looks at the specific conduct for which the defendant was convicted. "Thus, Congress intended that the enhancement provision be triggered by crimes having certain specified elements, not by

crimes that happened to be labeled 'robbery' or 'burglary' by the laws of the State of conviction." *Id.* at 588–89. To determine the elements of Taylor's crime, the Supreme Court necessarily had to consider the elements in the statute under which the defendant was convicted. Specifically, the Court had to ascertain whether Taylor had been convicted of "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* at 599. Looking at the elements laid out in the revised statute would have shed no light on Taylor's specific conduct.[5] Conversely, by defining "serious drug offense" by reference to the maximum term of imprisonment prescribed by state law, the ACCA leaves the decision regarding what narcotics crimes will trigger the sentencing enhancement to each state legislature's judgment.

The government also argues that calculating the maximum term of imprisonment under current state law conflicts with *United States v. Mortimer*, 52 F.3d 429 (2d Cir. 1995), in which the Second Circuit rejected the defendant's reliance on *Morton*. Defendant Mortimer pleaded guilty in federal court to two counts arising from the burglary of a department store. At sentencing, the district court found that Mortimer had been convicted in 1976 for possession of 2.3 ounces of marijuana and was sentenced to a term "exceeding one year and one month." *Id.* at 433. Under section 4A1.2(e)(1) of the

---

[5] *United States v. Whitley*, No. 04 Cr. 1381 (RCC), 2005 U.S. Dist. LEXIS 16719, 2005 WL 1949490 (S.D.N.Y. Aug. 11, 2005), cited by the government, is of little use in the interpretation of § 924(e). In *Whitley*, the defendant argued that the district court would have to look at the specific facts leading to his drug conviction to ascertain whether it was a "serious drug offense" within the meaning of the ACCA. Citing *Taylor* for the proposition that "a sentencing court ordinarily 'look[s] only to the fact of conviction and the statutory definition of the prior offense[s],'" the court concluded that it was a "serious drug offense" by reference to the state penal law in effect at the time of the prior offenses. *Id*. at *1. However, the court was not presented with and did not rule upon either the proper interpretation of the statutory language or the application of the rule of lenity. *Id.*

United States Sentencing Guidelines, "[a]ny prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted" for purposes of assigning criminal history points under section 4A1.1 of the Sentencing Guidelines. Since the burglary offense occurred less than fifteen years after Mortimer was sentenced for drug possession, the district court assigned three criminal history points under Sentencing Guideline § 4A1.1. *Id.*

Mortimer, citing *Morton*, argued that because New York had reclassified his drug possession crime from a felony to a misdemeanor punishable by less than "one year and one month," the district court should have looked at the current penalty for possession of 2.3 ounces of marijuana instead of his actual sentence. *Id.* If the district court had adopted this rule, Mortimer would not have been subject to a three-point increase in criminal history score. The Second Circuit rejected this argument. *Id.* at 434. Unlike the ACCA, section 4A1.2(e)(1) of the Guidelines makes clear that it is the "prior sentence of imprisonment . . . *imposed*" (emphasis added) that is relevant to the determination of criminal history score; "Mortimer's marijuana sentence [was] thus squarely encompassed by the unambiguous language." *Id.* Thus, the government's attempt here to read *Mortimer* as having cast *Morton* in doubt fails to account for the plain difference in language between section 4A1.2 of the Sentencing Guidelines and the ACCA. The Guidelines specifically instruct a court to consider the sentence actually "imposed" by the state court, while the ACCA instructs a court to consider what maximum term of imprisonment "is prescribed by law" for the drug offense. The difference in language is

hardly insignificant.  Moreover, while the Court hesitates to read too much into *Mortimer*, the opinion notes without qualification that the *Morton* court "recognized the possible ambiguity in § 924, and then resolved the ambiguity through application of the rule of lenity."  *Id.* at 433.  The *Mortimer* court was not unpersuaded by the *Morton* analysis, concluding only that it did not apply to the unambiguous language of section 4A1.2(e)(1) of the Sentencing Guidelines.  *Id.* at 434.

      Finally, the government argues that using the current maximum term of imprisonment leads to incongruous results where two defendants who violated the felon-in-possession statute on the same day are sentenced at different times, one before the amendment of the state drug laws and one after.  In such cases, whether a defendant is subject to the ACCA sentencing enhancement depends solely on the date of the federal sentencing.  This incongruity, however, is a result of Congress's choice of the word "is" in the definition of "serious drug offense," and, for the reasons given already, the Court is not at liberty to read this word out of the ACCA.[6]  Because the ACCA "leaves the standard by which to judge the seriousness of a state drug conviction to the policy of the state," *Morton*, 17 F.3d at 915, the ACCA implicitly acknowledges that the application of

---

[6] The government also argues that the Court should not look to the current state sentencing statute to determine the seriousness of Archer's drug offenses because, were a state to *increase* the penalties for a predicate drug offense after a defendant has violated the felon-in-possession statute but before sentencing in federal court, an ex post facto problem would arise.  The short answer is that no ex post facto violation is present in the instant case as the DLRA *decreased* the penalties for Archer's offenses.  In any event, the fact that under a hypothetical scenario not before the court a statute may be applied in an unconstitutional manner does not justify a judicial rewriting of 18 U.S.C. § 924(e)(2)(A)(ii) to place it in the past tense.

the sentencing enhancement to any given defendant depends on the state policy in effect at the time of federal sentencing.

## CONCLUSION

The Court finds that the definition of "serious drug offense" in the ACCA is properly interpreted as directing the court to look at the maximum term of imprisonment currently prescribed by state law. Accordingly, the Court holds that Archer's two Class C felony convictions, which currently carry a maximum term of imprisonment of nine years, are not "serious drug offenses" within the meaning of the ACCA. Because Archer has only one predicate felony, he is not subject to a sentencing enhancement under the ACCA.

Dated: New York, New York
       November 16, 2006

Richard J. Holwell
United States District Judge

15